**STATE of Minnesota, Respondent,**

v.

**James Lee ORGAN, Appellant.**

**No. 46614.**

Supreme Court of Minnesota.

Feb. 17, 1978.

---

C. Paul Jones, Public Defender, Greg Gaut, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Robert W. Johnson, County Atty., Edwin M. Wistrand, Asst. County Atty., Anoka, for respondent.

Heard before KELLY, TODD, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from a judgment of conviction ordered by the Anoka County District Court after a jury found defendant, James Lee Organ, guilty of possession with intent to sell unstamped cigarettes without a license in violation of Minn.St. 297.11, subd. 2. Defendant was sentenced to a 6-month term in the Anoka County jail. The sentence was served consecutively with a sentence imposed after a plea of guilty to related charges in Hennepin County. Defendant has served these sentences and was released in January 1977.

Prior to his arrest, defendant resided in a mobile home in Lino Lakes, Minnesota. A search warrant authorizing the interception of telephone communications at defendant's home from February 21, 1975, to March 3, 1975, was issued by the Anoka County District Court. On March 4, 1975, the day after the electronic surveillance had been terminated, Terrill Smith, an investigator for the Organized Crime Unit of the Minnesota Attorney General's Office, was issued a warrant by the Anoka County Court authorizing him to search defendant's Lino Lakes home and his automobile.

In the affidavit supporting the application for the search warrant, Smith detailed certain items which he alleged reliable informants, including an undercover police officer, had personally observed in defendant's home. The pertinent part of Smith's affidavit applicable to this case stated:

"On February 28, 1975, your affiant again spoke with Informant # 2. Informant # 2 told your affiant that Informant # 2 had been in James Lee Organ's mobile home at 6333 Hodgson Road, lot, Circle Pines, Minnesota, within 72 hours prior to and including February 27, 1975. Informant # 2 stated that while in Organ's home, Informant # 2 saw approxi-

mately 2 cases of cigarettes which Organ said were purchased in Carolina. Informant # 2 also stated that Informant # 2 saw a Thompson submachine gun, a number of cases of fireworks and a Montgomery Wards Stereo which Organ told Informant # 2 was stolen."

Electronic surveillance was not mentioned in the affidavit. Defendant and the state agree that "Informant # 2" was Richard Fields, who also testified at the trial. Fields was not a police officer but had been a paid police informant.

The search resulted in the seizure of 143 cartons of cigarettes for which no Minnesota cigarette tax had been paid and numerous other items. Defendant was arrested at the time of the search and was subsequently indicted by a grand jury for possession of unstamped cigarettes with intent to sell. We remand with instructions.

On May 30, 1975, defendant was given the 90-day inventory notice of interception of wire communications as required by Minn.St. 626A.10, subd. 1. The 10-day notice provided for in subd. 2 was never given. The relevant subdivisions of § 626A.10 provide:

"Subdivision 1. Notice of order. Within a reasonable time but not later than 90 days after the termination of the period of a warrant or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the warrant and the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of:

"(1) the fact of the issuance of the warrant or the application;

"(2) the date of the issuance and the period of authorized, approved or disapproved interception, or the denial of the application; and

"(3) the fact that during the period wire or oral communications were or were not intercepted.

"Subd. 2. Notice of intent to use evidence obtained by interception of wire or oral communication. The contents of any intercepted wire or oral communication or *evidence derived* therefrom shall not be received in evidence otherwise disclosed in any trial, hearing, or other proceeding in a federal or state court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information." (Italics supplied.)

At a Rasmussen hearing held on June 2, 1975, testimony was given regarding Officer Smith's application for and affidavit in support of the search warrant. At that hearing, the relationship between the wiretap and the application and affidavit was explored. On cross-examination, Smith testified as follows:

"Q    All right. Did you listen to any of [the] communications [intercepted between February 21, 1975, and March 3, 1975]?

"A    I would have to say that I overheard small parts of it. My job was not to listen to it. If there was any listening I did, it was purely—I guess I could best describe it as simply overhearing it while other people were monitoring it.

"Q    Was any of the information which was stated in your affidavit for a search warrant first communicated to you as a result of this particular wire interception?

"A    To the best of my recollection, I am trying to remember exactly what was on the affidavit. I would say no.

"Q    But you had received other information than was in this affidavit for a search warrant, hadn't you?

"A    Yes, I am sure I had.

"Q    And that information was from wire communications, wasn't it?

"A  I had definitely received some information from wire communications, yes.

"Q  And in your own mind, as a police officer, you find it difficult, don't you, to separate the information received from the wire communications and the other information you have in this affidavit?

"A  Well, I think in general I am pretty well able to remember where a specific piece of information came from.

"Q  I mean, but you form a conclusion as to a certain person, that he may have something in his trailer house, at least that is what you state here, okay?

"Now, when you form that conclusion, you base it on all of the things that come to your attention, don't you—the statement of informants and also wire interceptions?

"A  Yes, but it really isn't that hard to keep track of where the information came from.

"Q  Is it a fair statement to say that your application for a search warrant, even though not written here, did include in your own mind information you received from wire interceptions?

"A  I would say there is no information that I received from wire information on there unless I had received it from a duplicate source that was other than wire information.

"Q  But the information you received on wire information then helped to buttress or support your affidavit, didn't it?

"A  It may have to some extent.  I would question whether it was necessary for it to be further buttressed than it already had been.

*    *    *    *    *    *

"Q  Where did you first hear that information that [the defendant] had cartons of cigarettes?

"A  I first heard that Mr. Organ had cartons of cigarettes from an informant.

"Q  Did you hear any of that information from the wiretap?

"A  Not directly.

"Q  But indirectly from an officer who was listening?

"A  It was related to me that somebody had overheard some conversation about cigarettes.

*    *    *    *    *    *

"Q  *  *  *  Did any information from the wire communications relate to cigarettes on the premises?

"A  I was told that there was some conversation about cigarettes.

"Q  From wire communications?

"A  That is right."

On redirect examination, Smith further testified:

"Q  With regard to the information that you presented in your affidavit, and in relation to—I believe there are two informants in the affidavit, is that correct?  I believe you indicated informant number 1 and informant number 2.

"A  Yes, I believe that is right.

"Q  That would all be based on information that you have independently obtained?

"A  That is right.

"Q  There was a question by defense counsel as to whether or not any of your—I am not sure if he phrased it this way, but probable cause for the search warrant was buttressed by information you received in it from a wiretap, is that correct?

"Do you recall the question?

"A  I recall the question, yes.

"Q  I would just like to clarify that a little bit.  Would that be buttressed in you own mind, or in the application itself?

*    *    *    *    *    *

"THE WITNESS:  Well, it certainly would have buttressed it to some extent in my own mind inasmuch as it followed along with the rest of the information that I had received, but as far as the affidavit goes for the search warrant, I really felt no need that it had to be buttressed any further and therefore it didn't need any wiretap information in applying for a search warrant.

"MR. FABER:

"Q You felt that you had independently developed sufficient information, and you presented that information?

\* \* \* \* \* \*

"THE WITNESS: Yes.

"MR. FABER:

"Q Mr. Smith, with regard to the information regarding the cigarettes that is contained on the affidavit, I believe you indicated that you heard that information from an informant and as well as you overheard some of the officers monitoring the wiretap about that information, is that correct?

"A That is correct.

"Q Isn't it true that when defense counsel was asking you questions, you indicated you had heard it from the informant first?

"A That is correct."

During the Rasmussen hearing the district court stated:

" \* \* \* I already indicated, if I haven't already ruled—there has been so much time that has gone by in the meantime, that the matter of electronic surveillance is irrelevant. There has been no notice given that any evidence will be used that was obtained as a result of electronic surveillance and the State has indicated on the record in open court that they did not intend to offer any such evidence, and in view of that situation, it is irrelevant and we will stand on the affidavit which was made in support of an application for a search warrant. That is all the issues I can see in this case. \* \* \* "

At the close of the Rasmussen hearing, the district court further stated:

" \* \* \* I don't believe I have any alternative but to deny the motion to suppress evidence in this case, or to quash the indictment as the case may be, on the grounds that the thrust of the defendant's argument, I believe, had to do with the wiretap, or electronic surveillance, and inasmuch as there would be no evidence offered that was obtained as a result of electronic surveillance, I deemed that irrelevant, and looking at the search warrant like we do all search warrants, we look at the affidavit and the facts that are stated therein and we don't go beyond the four corners of it. I guess that is an old standard rule that still pretty much pertains, and the affidavit and the application appears to be regular. They do refer to informants, some of which are identified, and some of which are not, and there was some property obtained not listed in the search warrant, and that is not uncommon, and in view of all those circumstances, I am denying the motion to suppress."

On June 13, 1975, defendant sought an emergency order for disclosure of the tapes from the judge who had originally authorized the interception. The court stated it would take the matter under advisement after defense counsel made the following statement:

" \* \* \* Hennepin County had a wiretap in early December and then Hennepin County had a wiretap at the same time as Anoka had a tap. They had taps on the Hennepin County phones and then Anoka had a tap. Immediately after the tap expired, I believe it was March 3rd, Judge Sokolowski issued a search warrant which kind of leads to a reasonable inference that the search warrant was based upon the wiretaps and the search warrant material obviously will be introduced. It just seems to me that the State, with 30 days of wiretaps and a search warrant, is going to do something with this rather than just listen to phones, and also that we regard the State as an entity, that they do cooperate. \* \* What Hennepin County knows, Anoka knows."

That court apparently never ruled on defendant's motion for disclosure. Furthermore, there is no indication in the record that his knowledge of the matter was communicated to the judge of the Rasmussen hearing so as to provide a basis for his decision in this matter.

The cigarettes which were seized pursuant to the search warrant were introduced

into evidence at trial, but neither the recordings nor the transcripts of the conversations obtained from the wiretaps were introduced.

The salient issues involved here are whether the disclosure of wiretap records was necessary to effectuate the intent and purposes of Minn.St. c. 626A and 18 U.S.C.A., §§ 2510 to 2520, and to satisfy due process. Because of the remand, we do not decide these issues at this time.

Defendant contends that due process requires such disclosure "because only those transcripts reveal whether he had a statutory right," pursuant to § 626A.10, subd. 2, "to have evidence which was crucial to his conviction suppressed." He does not claim that the transcripts will show that the wiretap itself was illegal, but only that the cigarettes introduced against him at trial were "derived" from a wiretap for which he did not receive the statutory 10-day notice. The pertinent statute, § 626A.10, subd. 2, prohibits the prosecution from introducing the "contents of any intercepted wire or oral communication *or evidence derived therefrom*" at "any trial, hearing, or other proceeding in a federal or state court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved." (Italics supplied.) Minn.St. 626A.11, subd. 3, also provides:

> "In the absence of the notice to a defendant required by section 626A.10, no evidence relating to intercepted communications shall be admissible in evidence or otherwise disclosed in any criminal proceeding against the defendant."

It is uncontroverted that the statutory 10-day notice was not given to defendant in this case.

Defendant also relies upon *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218 (1963), in which the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[1] In *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), the Supreme Court interpreted the *Brady* decision as follows:

> "The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." 408 U.S. 794, 92 S.Ct. 2568, 33 L.Ed.2d 713.

Defendant claims that the *Brady* and *Moore* decisions mandate disclosure of the wiretap transcripts in order to enable him to show that evidence derived from the wiretap was used against him in violation of the 10-day notice statute, § 626A.10, subd. 2. The state concedes that defendant repeatedly requested disclosure thereby satisfying the first criterion of *Moore*, but contends that the elements of materiality and favorability have not been shown. Defendant claims that "the undisclosed records in this case are far more material than the suppressed evidence" was in three prior Minnesota cases which have applied the rule enunciated in *Brady*. See, *State v. Swanson*, 307 Minn. 412, 240 N.W.2d 822 (1976); *State v. Hyleck*, 286 Minn. 126, 175 N.W.2d 163, certiorari denied, 399 U.S. 932, 90 S.Ct. 2267, 26 L.Ed.2d 803 (1970); and *State v. Blankenship*, 277 Minn. 32, 151 N.W.2d 410 (1967).

The affidavits, transcripts, and recordings concerning the wiretap could be either material or favorable to defendant's right

---

1. The portion of the *Brady* rule pertinent to this case is now contained in Rule 9.01, subd. 1(6), Rules of Criminal Procedure, which became effective after the present case arose. The rule provides: "The prosecuting attorney shall disclose to defense counsel any material or information within his possession and control that tends to negate or reduce the guilt of the accused as to the offense charged."

to have them suppressed under § 626A.10, subd. 2, if they show that information in the search warrant which led to the seizure and subsequent introduction of the cigarettes at trial was "derived" from information obtained from the electronic surveillance and not from an independent source. Since this material was not made part of the record, we can only speculate about its contents. The affidavits, wiretap transcripts, and recordings may demonstrate that the police were monitoring telephone calls relating to cigarettes, thereby raising an inference that the state's knowledge about the cigarettes may have been obtained from the wiretap and not independently from an informant. The only record we have on this point is Officer Smith's testimony. Since the record is incomplete, we can only wonder whether the officers may have told the informant to look for cigarettes when he was requested to visit defendant's home to determine if defendant had returned from Florida. We must have further evidence and findings and therefore remand for that purpose. Additionally, the date when the presence of the unlawful cigarettes was first discovered should be supplied in order to determine the original source of Officer Smith's knowledge thereof. The record is not complete enough for us to make a determination in this sensitive area as to whether the information about the cigarettes was "derived" from the wiretap, nor was there an adequate determination below.

The Minnesota Privacy of Communications Act, c. 626A, was enacted in response to the passage of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 211, codified at 18 U.S.C.A., §§ 2510 to 2520. The Federal statute permits states to enact electronic surveillance statutes. Moreover, "[a]ll state wiretaps are foreclosed under the Federal law unless authorized by a similar state statute which may be more restrictive but not less so than the Federal act." *State v. Frink,* 296 Minn. 57, 65, 206 N.W.2d 664, 669 (1973). See, also, *Commonwealth v. Vitello,* 367 Mass. 224, ——, 327 N.E.2d 819, 833 (1975).

Defendant alleges that the Federal statute would have allowed him to move for disclosure of the surveillance records under two separate provisions: 18 U.S.C.A., §§ 2518(8)(d) and 2518(10)(a). Pursuant to § 2518(8)(d), a defendant may move for disclosure after receiving a 90-day notice, as follows:

" * * * The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed."

Pursuant to § 2518(10)(a), a defendant may seek disclosure at the time he makes a motion to suppress, as follows:

" * * * The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice."

Neither of these inspection provisions is contained in the Minnesota act. Instead, Minn.St. 626A.12, subd. 4, allows a judge to conduct an in camera inspection after a motion to suppress has been made. The statute provides as follows:

"Examination of communications by court. In any motion made under this section, if the court finds necessary to the determination of such motion to consider the contents of the intercepted communications in question, and the state does not consent to the examination thereof by the moving party, the court may order the state to deliver such recordings and any transcripts of the same for the inspection of the court in camera. Upon such delivery the court shall rule on the motion, and if the moving party objects to such ruling, and the trial is continued to an adjudication of the guilt of the moving

party, the entire recordings shall be preserved by the state, and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge."

Defendant contends that the differences between the disclosure provisions of the Federal and state acts require that the Federal disclosure provisions be read into the Minnesota act. Determination of this issue need not be made for the resolution of this case at this juncture, nor is there a need to delve into any other issues raised at this time. If the trial court determines after a hearing that the wiretaps were not a source of information concerning the cigarettes, then the other issues vanish. Until such time as the record is completed, we can neither decide the issues raised nor determine whether there is a need to decide the issues that have been raised. We do feel that the facts presented in this case require the trial court to consider the intercepted communications in question. This decision should not be made by the prosecution alone as has been done here. The sole question for the trial court is whether the information in the search warrant of March 4, 1975, was in any way "derived" from the wiretap. The procedure outlined in § 626A.12, subd. 4, should be followed in answering this question.

We therefore grant a stay of this case under Minnesota Post Conviction Remedy Statute, Minn.St. 590.01, and direct defendant to apply to the district court for a hearing to complete the record as indicated above.

Case remanded with instructions.